Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ROTH BETEILIGUNGS GmbH, Individually and on behalf of all others similarly situated, | No. |
| | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| Plaintiff, | |
| v. | CLASS ACTION |
| GTT COMMUNICATIONS, INC., RICHARD D. CALDER, JR., ERNIE ORTEGA, MICHAEL T. SICOLI, DANIEL M. FRASER, and STEVEN BERNS, | JURY TRIAL DEMANDED |
| Defendants. | |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Frank Roth Beteiligungs GmbH ("Plaintiff") alleges the following upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included: (a) review and analysis of public filings with the United States Securities and Exchange Commission ("SEC") made by GTT Communications, Inc. ("GTT" or the "Company") and related parties; (b) review and analysis of press releases and other publications disseminated by GTT and related parties; (c) review and analysis of shareholder communications, conference calls and postings on GTT's website concerning the Company's public statements; (d) review and analysis of news articles concerning GTT and related parties; and (e) review of other publicly available information concerning GTT, related parties, and/or the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of all persons or entities that purchased or otherwise acquired GTT publicly traded securities from May 5, 2016 through November 9, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges that Defendants violated the Exchange Act by publishing false and misleading statements to artificially inflate the Company's stock price.

2. GTT operates a global communications network, providing telecommunications services to large, multinational enterprises, carriers, and governments across five continents. Throughout the Class Period, GTT stated that its internal controls over financial reporting were "effective" and provided "reasonable assurance" that all required information was being disclosed.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

3. In truth, GTT's internal controls over financial reporting were inadequate, which led to years of inaccurate financial reporting, including failing to make adequate adjustments to the Company's Cost of Telecommunication Services and failing to recognize certain expenses.

4. As a result of GTT's inadequate internal controls, the Company announced after market hours on August 10, 2020 that it would delay its filing of its quarterly report for the quarter ended June 30, 2020. The Company stated it had identified "certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls."

5. On this news, GTT shares fell by $0.65, or over 11%, from closing at $5.61 on August 10, 2020 to close at $4.96 on August 11, 2020.

6. On November 9, 2020, the Company announced its quarterly report for the quarter ended September 30, 2020 would be delayed as well. The Company stated the delay was caused by the ongoing review and "examining the accounting for Cost of Telecommunications Services and [. . .] a number of issues in connection with the Company's previously issued financial statements".

7. On this news, GTT shares fell by $0.04, or 1%, to close at $3.96 on November 9, 2020.

8. Plaintiff and the other Class members have suffered significant damages due to Defendants' false and misleading statements and omissions.

## **JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

2

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered, the subsequent damages took place in, and the Company maintains locations in this judicial district.

12. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

13. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14. Defendant GTT is incorporated in the state of Delaware, and the Company's principal executive offices are located at 7900 Tysons One Place, Suite 1450, McLean, VA 22102. GTT securities trade on the New York Stock Exchange ("NYSE") under the symbol "GTT."

15. Defendant Richard D. Calder, Jr. ("Calder") was the Company's Chief Executive Officer ("CEO") from the start of the Class Period to May 31, 2020.

16. Defendant Ernie Ortega ("Ortega") was the interim CEO of GTT from July 6, 2020 through the end of the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

17.     Defendant Michael T. Sicoli ("Sicoli") was the Company's Chief Financial Officer ("CFO") from the start of the Class Period to September 2019.

18.     Defendant Daniel M. Fraser ("Fraser") was the Company's interim CFO from September 2019 to April 6, 2020.

19.     Defendant Steven Berns ("Berns") was the Company's CFO from April 6, 2020 through the end of the Class Period.

20.     Defendants Calder, Ortega, Sicoli, Fraser and Berns are collectively referred to herein as the "Individual Defendants."

21.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

22.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

23.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

24.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

25.     On May 5, 2016, GTT filed a Form 10-Q for the fiscal quarter ended March 31, 2016 (the "1Q 2016 10-Q").  Attached to the 1Q 2016 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26.     The 1Q 2016 10-Q stated the following, in pertinent part, regarding GTT's internal controls:

**Evaluation of Disclosure Controls and Procedures**

*Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision of and with the participation of our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 and 15d-15 under the Exchange Act ("Disclosure Controls").* Based on our evaluation, our CEO and CFO concluded that our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are

5

required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. ***The CEO and the CFO, with assistance from other members of management, have reviewed the effectiveness of our disclosure controls and procedures as of March 31, 2016, and based on their evaluation, have concluded that the disclosure controls and procedures were effective as of such date.***

**Changes in Internal Control over Financial Reporting**

***There were no changes in our internal control over financial reporting***, as defined in Rules 13a-15(f) and 15d-15(f) of the Securities Exchange Act of 1934, ***that occurred during the period ended March 31, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

27.    The 1Q 2016 10-Q also stated the following, in relevant part, regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

***Cost of telecommunication services provided increased by $28.5 million, or 75.6%, from $37.7 million for the three months ended March 31, 2015 to $66.2 million for the three months ended March 31, 2016.*** Consistent with our increase in revenue, the increase in cost of telecommunication services provided was principally driven by the acquisitions of MegaPath and One Source.

On a constant currency basis using the average exchange rates in effect during the three months ended March 31, 2015, cost of telecommunication services provided would have been higher by $0.2 million for the three months ended March 31, 2016.

6

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(Emphasis added.)

28.    On August 8, 2016, the Company filed a Form 10-Q for the fiscal quarter ended June 30, 2016 (the "2Q 2016 10-Q"). Attached to the 2Q 2016 10-Q were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.    The 2Q 2016 10-Q stated, in relevant part, the following regarding GTT's internal controls:

**Evaluation of Disclosure Controls and Procedures**

*Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision of and with the participation of our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 and 15d-15 under the Exchange Act ("Disclosure Controls").* Based on our evaluation, our CEO and CFO concluded that our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. *The CEO and the CFO, with assistance from other members of management, have reviewed the effectiveness of our disclosure controls and procedures as of June 30, 2016, and based on their evaluation, have concluded that the disclosure controls and procedures were effective as of such date.*

**Changes in Internal Control over Financial Reporting**

During the three months ended June 30, 2016, we implemented

7

a new financial accounting system. In connection with the implementation of this new system, we updated many of the processes and procedures related to our internal control over financial reporting, as needed. ***We do not believe the implementation of the new system or the corresponding changes in processes and procedures has had or will have a material or adverse effect on our internal control over financing reporting.*** Except as otherwise described above, there have been no other changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) as of June 30, 2016, that has materially affected, or is reasonably likely to materially affect our internal control over financial reporting.

(Emphasis added.)

30.    The 2Q 2016 10-Q also stated, in relevant part, the following regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

***Cost of telecommunications services provided increased by $16.8 million, or 32.7%, from $51.5 million for the three months ended June 30, 2015 to $68.3 million for the three months ended June 30, 2016.*** Consistent with our increase in revenue, the increase in cost of telecommunications services provided was principally driven by the acquisitions of OSN and Telnes, as well as organic growth.
On a constant currency basis using the average exchange rates in effect during the three months ended June 30, 2015, cost of telecommunications services provided would have been higher by $0.1 million for the three months ended June 30, 2016.

(Emphasis added.)

31.    On November 9, 2016, the Company filed a Form 10-Q for the fiscal quarter ended September 30, 2016 (the "3Q 2016 10-Q"). Attached to the 3Q 2016 10-Q were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material

8

changes to the Company's internal control over financial reporting and the disclosure of all fraud.

32.    The 3Q 2016 10-Q stated, in relevant part, the following regarding GTT's internal controls:

**Evaluation of Disclosure Controls and Procedures**

*Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision of and with the participation of our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 and 15d-15 under the Exchange Act ("Disclosure Controls").* Based on our evaluation, our CEO and CFO concluded that our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. *The CEO and the CFO, with assistance from other members of management, have reviewed the effectiveness of our disclosure controls and procedures as of September 30, 2016, and based on their evaluation, have concluded that the disclosure controls and procedures were effective as of such date.*

**Changes in Internal Control over Financial Reporting**

*There were no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) as of September 30, 2016, that has materially affected, or is reasonably likely to materially affect our internal control over financial reporting.*

(Emphasis added.)

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

33.     The 3Q 2016 10-Q also stated the following, in pertinent part, regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

*Cost of telecommunications services provided increased by $14.8 million, or 27.8%, from $53.4 million for the three months ended September 30, 2015 to $68.2 million for the three months ended September 30, 2016.* Consistent with our increase in revenue, the increase in cost of telecommunications services provided was principally driven by the acquisitions of OSN and Telnes, as well as organic growth.

On a constant currency basis using the average exchange rates in effect during the three months ended September 30, 2015, cost of telecommunications services provided would have been higher by $0.5 million for the three months ended September 30, 2016.

(Emphasis added.)

34.     On March 8, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K").  Attached to the 2016 10-K were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

35.     The 2016 10-K stated, in relevant part, the following regarding GTT's internal controls:

**Management's Report on Internal Control over Financial Reporting and Attestation Report of the Registered Public Accounting Firm**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). *Management conducted an assessment of the effectiveness of our internal control over financial reporting* based on the criteria set forth in Internal

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). *Based on the assessment, management has concluded that its internal control over financial reporting was effective as of December 31, 2016, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. GAAP.* The effectiveness of our internal control over financial reporting as of December 31, 2016, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in their report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

During the year ended December 31, 2016, we implemented a new financial accounting system. In connection with the implementation of this new system, we updated many of the processes and procedures related to our internal control over financial reporting, as needed. *We do not believe the implementation of the new system or the corresponding changes in processes and procedures has had or will have a material or adverse effect on our internal control over financing reporting. Except as otherwise described above, there were no other changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) during the quarter ended December 31, 2016, that has materially affected, or is reasonably likely to materially affect our internal control over financial reporting.*

(Emphasis added.)

36. The 2016 10-K also stated the following, in pertinent part, regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

*Cost of telecommunications services provided increased by $69.6 million, or 34.0%, from $204.5 million for the year ended December 31, 2015 to $274.0 million for the year ended December 31, 2016.* Consistent with our increase in revenue, the increase in cost of telecommunications services provided was principally driven by the Acquisitions, as well as organic growth and the purchase of

11

certain customer contracts.

On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2015, cost of telecommunications services provided would have been higher by $1.0 million for the year ended December 31, 2016.

(Emphasis added.)

37.    On March 1, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K").  Attached to the 2017 10-K were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

38.    The 2017 10-K stated, in pertinent part, the following regarding GTT's internal controls:

**Management's Report on Internal Control over Financial Reporting and Attestation Report of the Registered Public Accounting Firm**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting*** based on the criteria set forth in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). ***Based on the assessment, management has concluded that its internal control over financial reporting was effective as of December 31, 2017, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. GAAP.*** The effectiveness of our internal control over financial reporting as of December 31, 2017, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in their report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

12

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

> ***Except for the implementation of certain internal controls related to the adoption of the new revenue recognition standard (Topic 606), there were no changes in our internal control over financial reporting*** (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) ***during the year ended December 31, 2017, that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.*** The Company implemented new controls as part of its effort to adopt Topic 606. The adoption of Topic 606 required the implementation of new accounting processes, which changed the Company's internal controls over revenue recognition and financial reporting. We implemented these internal controls to ensure we adequately evaluated our contracts and properly assessed the impact of Topic 606 on our financial statements to facilitate its adoption in 2018.

(Emphasis added.)

39.     The 2017 10-K also stated the following, in pertinent part, regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

> ***Cost of telecommunications services provided increased by $152.5 million, or 54.5%, from $279.6 million for the year ended December 31, 2016 to $432.1 million for the year ended December 31, 2017.*** Consistent with our increase in revenue, the increase in cost of telecommunications services provided was principally driven by 2017 Acquisitions and the purchase of certain customer contracts.
> On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2016, cost of telecommunications services provided would have been higher by $1.0 million for the year ended December 31, 2017.

(Emphasis added.)

40.     On March 1, 2019, the Company filed a Form 10-K for the fiscal year ended December 31, 2018 (the "2018 10-K").  Attached to the 2018 10-K were SOX certifications signed by Defendants Calder and Sicoli attesting to the

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF<br>THE FEDERAL SECURITIES LAWS

accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

41.     The 2018 10-K stated, in pertinent part, the following regarding GTT's internal controls:

**Management's Report on Internal Control over Financial Reporting and Audit Report of the Registered Public Accounting Firm**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting*** based on the criteria set forth in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013). ***Based on the assessment, management has concluded that its internal control over financial reporting was effective as of December 31, 2018, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. GAAP.*** The effectiveness of our internal control over financial reporting as of December 31, 2018, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in their report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

***Except for the 1) Company's design and implementation of new and enhanced controls to remediate the material weakness described above, and 2) the implementation of certain internal controls related to the adoption of the new leasing standard (Topic 842), there were no changes in our internal control over financial reporting*** (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) ***during the three months ended December 31, 2018, that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.*** The Company implemented new controls as part of its effort to adopt Topic 842. The adoption of Topic 842 required the implementation of new accounting processes, which changed the Company's internal controls

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

over lease accounting. We implemented these internal controls to ensure we adequately evaluated our leases and properly assessed the impact of Topic 842 on our financial statements to facilitate its adoption in 2019.

(Emphasis added.)

42.    The 2018 10-K also stated, in relevant part, the following regarding GTT's Cost of Telecommunications Services:

**Cost of Telecommunications Services**

***Cost of telecommunications services increased by $387.3 million, or 89.6%, from $432.1 million for the year ended December 31, 2017 to $819.4 million for the year ended December 31, 2018.*** Recurring cost of telecommunications services was approximately 94% and 95% of total cost of telecommunications services for the year ended December 31, 2018 and 2017, respectively. Consistent with our increase in revenue, the increase in cost of telecommunications services was principally driven by the 2017 Acquisitions and 2018 Acquisitions.

On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2017, cost of telecommunications services would have been lower by $12.2 million for the year ended December 31, 2018.

(Emphasis added.)

43.    On March 2, 2020, the Company filed a Form 10-K for the fiscal year ended December 31, 2019 (the "2019 10-K"). Attached to the 2019 10-K were SOX certifications signed by Defendants Calder and Fraser attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

44.    The 2019 10-K stated the following, in relevant part, about GTT's internal controls:

**Management's Annual Report on Internal Control over Financial Reporting**

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting*** based on the criteria set forth in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. ***Based on the assessment, management has concluded that our internal control over financial reporting was effective as of December 31, 2019, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. GAAP.*** The effectiveness of our internal control over financial reporting as of December 31, 2019, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in its report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

***Except for the Company's design and implementation of certain controls related to the adoption of the new leases standard (ASC 842), there were no changes in our internal control over financial reporting*** (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) ***during the year ended December 31, 2019, that have materially affected, or are reasonably likely to materially affect our internal control over financial reporting.*** The Company implemented new controls as part of its effort to adopt Topic 842. The adoption of Topic 842 required the implementation of new accounting processes, which changed the Company's internal controls over lease accounting. We implemented these internal controls to ensure we adequately evaluated our leases and properly assessed the impact of Topic 842 on our financial statements to facilitate its adoption in 2019.

(Emphasis added.)

45.    The 2019 10-K stated the following, in pertinent part, about GTT's Cost of Telecommunications Services:

**Cost of Telecommunications Services**

---

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11

***Cost of telecommunications services increased by $122.5 million, or 14.9%, from $819.4 million for the year ended December 31, 2018 to $941.9 million for the year ended December 31, 2019.*** Recurring cost of telecommunications services was approximately 93% and 94% of total cost of telecommunications services for the years ended December 31, 2019 and 2018, respectively. Consistent with our increase in revenue, the increase in cost of telecommunications services was principally driven by the 2018 Acquisitions.

On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2018, cost of telecommunications services would have been higher by $21.6 million for the year ended December 31, 2019.

(Emphasis added.)

12
13
14
15
16
17
18
19
20
21

46.     The above statements in paragraphs 25-45 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (1) the Company's internal controls suffered from issues related to the recording and reporting of Cost of Telecommunications Services; (2) the Company's previously reported Cost of Telecommunications was inaccurate or accounted for unsupported adjustments; (3) inadequate internal controls would result in delays in the Company's 10-Q quarterly reports; and (4) as a result of the foregoing, Defendants' public statements were materially false and/or misleading and/or lacked a reasonable basis.

22

**THE TRUTH EMERGES**

23
24
25
26
27
28

47.     On August 10, 2020, after market hours, GTT filed a NT 10-Q notification of inability to timely file Form 10-Q for the quarter ended June 30, 2020 ("2Q NT 10-Q").

48.     The 2Q NT 10-Q stated, in relevant part, the following regarding the delay in the quarterly report:

17

GTT Communications, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2020 (the "Form 10-Q") within the prescribed time period without unreasonable effort or expense. ***In the course of closing the Company's books for the quarter ended June 30, 2020, the Company identified certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls.***

Upon identifying these issues, the Company informed the Audit Committee of the Board of Directors (the "Audit Committee") and CohnReznick LLP, the Company's independent registered public accounting firm (the "Independent Auditor"). ***The Company's management and the Audit Committee, with assistance from outside counsel and consultants, are reviewing (the "Review") these issues and assessing the effect, if any, on the Company's financial statements for the quarter ended June 30, 2020 and previously issued financial statements, as well as whether there are any material weaknesses in the Company's internal controls.***

At this time, the Company does not know whether the Review will identify any issues other than those described above. Although the Company plans to file the Form 10-Q as soon as possible after the completion of the Review, the Company does not anticipate filing the Form 10-Q on or before August 17, 2020, the extended period provided for the filing under Rule 12b-25(b) of the Securities Exchange Act of 1934, as amended. The Company is unable to predict a specific filing date at this time due to the early stage of the Review.

(Emphasis added.)

49.     On this news, GTT shares fell by $0.65, or over 11%, from closing at $5.61 on August 10, 2020 to close at $4.96 on August 11, 2020.

50.     On November 9, 2020, GTT filed a NT 10-Q notification of inability to timely file Form 10-Q for the quarter ended September 30, 2020 ("3Q NT 10-Q").  GTT had yet to file a 10-Q for its second quarter.

51.     The 3Q NT 10-Q stated, in relevant part, the following regarding the

18

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

delay in the quarterly report:

As reported by the Company in its prior filings with the Securities and Exchange Commission (the "SEC"), *in the course of closing the Company's books for the quarter ended June 30, 2020, the Company identified certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls.* The Company's management and the Audit Committee (the "Audit Committee") of the Company's Board of Directors (the "Board"), with assistance from outside counsel and consultants, commenced a review (the "Review") with respect to these issues and are assessing the effect, if any, on the Company's unissued and previously issued financial statements, as well as whether there are any material weaknesses in the Company's internal controls.

In addition, as previously disclosed, *the Review is examining the accounting for Cost of Telecommunications Services and has identified a number of issues in connection with the Company's previously issued financial statements*, including: *(i) adjustments made without adequate support to Cost of Telecommunications Services during the year ended December 31, 2019 and the three months ended March 31, 2020* that had the effect of removing expenses from the Company's income statement at quarter-end and then recognizing certain of those expenses in subsequent quarters; and *(ii) failures during the years ended December 31, 2018 and 2017 to recognize certain expenses on the Company's income statement by recording such expenses to goodwill* and thereby attributing such expenses to pre-acquisition accruals, without adequate support, for companies that had been acquired. In addition, *the Review is also examining: (x) certain intercompany transactions recorded during the years ended December 31, 2019, 2018, 2017 and 2016, and each of the quarters during the years ended December 31, 2019, 2018, 2017 and 2016*; (y) accounting for bad debt expense during the year ended December 31, 2019; and (z) accounting for credits issued to customers during the years ended December 31, 2019 and 2018 and the three months ended March 31, 2020.

Furthermore, as disclosed in prior filings with the SEC, *the*

19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

***Company is also reassessing its previous conclusions regarding the effectiveness of its internal control over financial reporting.*** At the conclusion of the Review, the Company expects the Review to identify material weaknesses in the Company's internal control over financial reporting, and the Company intends to continue to evaluate and implement remedial measures to address any such material weaknesses.

At this time, the Company has not concluded its Review and there is no assurance that additional items will not be identified. ***The Company's management and the Audit Committee, with assistance from outside counsel and consultants, are continuing to assess the effect of the matters described above on the Company's financial statements for the years ended December 31, 2019, 2018, 2017 and 2016***, ***each of the quarters during the years ended December 31, 2019, 2018, 2017 and 2016 and the quarter ended March 31, 2020***. As of the date of filing this Form 12b-25, the Company is unable to estimate the total potential impact of the issues described herein on its previously issued financial statements.

(Emphasis added.)

52.     On this news, GTT shares fell by $0.04, or 1%, from opening at $4.00 on November 9, 2020 to close at $3.96.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired GTT securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of GTT and its subsidiaries, members of the Individual Defendants' immediate families and their

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, GTT securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

56.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

57.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of GTT;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused GTT to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of GTT securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

60. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- GTT shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, GTT filed periodic public reports;

- GTT regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- GTT's securities were liquid and traded with sufficient volume during the Class Period; and

- GTT was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

61.     Based on the foregoing, the market for GTT securities promptly digested current information regarding GTT from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

65.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of GTT securities during the Class Period.

67.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of GTT were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of GTT, their control over, and/or receipt and/or modification of GTT's allegedly materially misleading statements, and/or their associations with the Company

which made them privy to confidential proprietary information concerning GTT, participated in the fraudulent scheme alleged herein.

68.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other GTT personnel to members of the investing public, including Plaintiff and the Class.

69.     As a result of the foregoing, the market price of GTT securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of GTT securities during the Class Period in purchasing GTT securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

70.     Had Plaintiff and the other members of the Class been aware that the market price of GTT securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased GTT securities at the artificially inflated prices that they did, or at all.

71.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

72.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

suffered in connection with their purchase of GTT securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     During the Class Period, the Individual Defendants participated in the operation and management of GTT, and conducted and participated, directly and indirectly, in the conduct of GTT's business affairs. Because of their senior positions, they knew the adverse non-public information about GTT's misstatement of revenue and profit and false financial statements.

75.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to GTT's financial condition and results of operations, and to correct promptly any public statements issued by GTT which had become materially false or misleading.

76.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which GTT disseminated in the marketplace during the Class Period concerning GTT's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause GTT to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of GTT within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of GTT securities.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

77.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GTT.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: January 12, 2021              **THE ROSEN LAW FIRM, P.A.**
                                     By:/s/Laurence M. Rosen
                                     Laurence M. Rosen (SBN 219683)
                                     355 South Grand Avenue, Suite 2450
                                     Los Angeles, CA 90071
                                     Telephone: (213) 785-2610
                                     Facsimile: (213) 226-4684
                                     Email: lrosen@rosenlegal.com

                                     *Counsel for Plaintiff*

27

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS