Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GTT Communications, Inc. Securities Litigation | Master File No. 2:21-cv-00270-DOC-AS |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.................................................................................1

II.   OVERVIEW OF THE LITIGATION.......................................................................2

  A.  Plaintiff's Allegations.....................................................................................2

  B.  Procedural History and Settlement..................................................................3

III.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............4

  A.  The Settlement Class Satisfies Rules 23(a)....................................................5

    1.   Numerosity................................................................................................5

    2.   Commonality ............................................................................................5

    3.   Typicality..................................................................................................6

    4.   Adequacy ..................................................................................................7

  B.  The Settlement Class Satisfies Rule 23(b)(3) .................................................8

    1.   Predominance............................................................................................8

    2.   Superiority ................................................................................................9

  C.  Ascertainability ..............................................................................................10

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL..........10

  A.  Plaintiff and Lead Counsel Adequately Represented the Class...................12

  B.  The Settlement is the Product of Arm's-Length Negotiations......................13

  C.  The Relief Provided to the Class is Adequate...............................................13

    1.   The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation...............................14

    2.   Risk of Maintaining Class Action Status Through Trial .........................16

  D.  The Remaining Rule 23(e)(2)(C) Factors Support Approval .......................16

    1.   The Methods of Distributing Relief and Processing Claims....................16

    2.   Proposed Attorneys' Fees........................................................................17

    3.   Other Agreements.....................................................................................17

E.    The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff ..................................................................................18

F.    The Remaining Ninth Circuit Factors Favor Approval .............................19

    1.    The Amount Offered in Settlement ............................................................19

    2.    The Extent of Discovery and Stage of Proceedings ..................................21

    3.    Experienced Counsel's Recommendations ................................................22

V.     THE COURT SHOULD APPROVE THE NOTICE PLAN ........................22

VI.    THE PROPOSED SCHEDULE...................................................................24

VII.  CONCLUSION .........................................................................................25

ii

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................8, 9

*Baker v. SeaWorld Entm't, Inc.*,
   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ......23

*Booth v. Strategic Realty Tr., Inc.*,
   No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ..............10

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...17

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........18

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .........................................................................14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................... 12, 14, 19

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........18, 19

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..............14

*In re "Agent Orange" Prod.* Liab. Litig.,
   597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................23

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal. May 16, 2013)..........
   ...............................................................................................................5, 9, 13

*In re Cooper Companies Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ....................................................................9

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................10

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019)..........................................................................10

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........................................................15

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009)......................................................................6

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)......................................................................14, 19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................16, 20

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ....20

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003)..............................................................16

*In re Silver Wheaton Corp. Sec. Litig.*,
   No. 2:15-cv-05146-CAS-JEMx, 2017 WL 2039171 (C.D. Cal. May 11, 2017) ....
   ...................................................................................................................4, 6, 7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)................................................................15

iv

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................15

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......6, 9, 10

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. *Litig.*,
No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .................21

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...............................................................8

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
No. 07-cv-7114-CAS-FMOx, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010)6, 7

*Mild v. PPG Indus., Inc.*,
No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) .......12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................22

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) .........................................................................8

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .......................................................................10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)........................................................................ passim

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)...............................................................................23

*Salazar v. Midwest Servicing Grp., Inc.*,
No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018)...........15

*Satchell v. Fed. Express Corp.*,
No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)......................13

v

*Turocy v. El Pollo Loco Holdings, Inc.*,
   No. 15-cv-1343-DOC-KESx, 2018 WL 3343493 (C.D. Cal. July 3, 2018)......4, 8

*Vikram v. First Student Mgmt., LLC*,
   No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ............19

*Vinh Nguyen v. Radient Pharms. Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012) ........................................................................5

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)....17, 18

*Wong v. Arlo Techs., Inc.*,
   No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)..........14

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...........8

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) ..............................................................................24

28 U.S.C. §1715.......................................................................................................23

**Rules**

Fed. R. Civ. P. 23.............................................................................. passim

**Other Authorities**

Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2020 Review and
   Analysis (Cornerstone Research)....................................................................20

Lead Plaintiff Arthur Capital Inc. ("Plaintiff") submits this memorandum in support of its Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiff requests that the Court: (1) preliminarily certify the Settlement Class and appoint class representative and class counsel; (2) preliminarily approve the Settlement on the terms set forth in the Stipulation of Settlement dated October 29, 2021 ("Stipulation"), filed concurrently herewith; (3) approve the proposed form and method of notice to the Settlement Class, and directing that such notice be disseminated; and (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters.[1]

## I.   PRELIMINARY STATEMENT

The Parties have reached a settlement to resolve the claims in the above-captioned securities class action ("Action") for $2,000,000 ("Settlement"). The Settlement provides a fair, reasonable, and adequate result for investors despite significant risk. Plaintiff now seeks preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement is *approvable*, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiff will provide notice to the Settlement Class, soliciting claims on, objections to, and exclusions from the Settlement. At the Settlement Hearing, with the Settlement Class Members' reactions in hand, the Court will determine whether to finally approve the Settlement.

The Parties engaged in extensive arm's-length settlement discussions both at, and after, a private mediation, guided by an experienced mediator. The resulting

---

[1] All capitalized terms not otherwise defined shall have the same meanings ascribed to them in the Stipulation.

1

Settlement is a fair, reasonable, and adequate result for the Settlement Class. Plaintiff faced several obstacles if litigation were to continue including significant disputes over the amount of potentially recoverable damages, the availability of proof, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and the real danger that Plaintiff would not be able to obtain a larger sum if litigation were to continue, as the available insurance funds were much less than the maximum estimated damages.

The Court must also preliminarily certify the Settlement Class to allow for notice to be distributed to Settlement Class Members. Certification of a settlement class is nearly automatic in securities class actions, and this case is no outlier. The Court need not decide at this stage whether to finally certify a settlement class.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the proposed documents that Plaintiff will use to communicate notice – the Long Notice, Summary Notice, and Postcard Notice (together "Notice").[2] The Notice and the Notice Plan closely track the forms and methods routinely used to communicate notice in securities class actions, and they satisfy the requirements of Rule 23. For these reasons the Court should preliminarily certify the Settlement Class and preliminarily approve the Settlement, Notice, and Notice Plan.

## II.    OVERVIEW OF THE LITIGATION

### A.    Plaintiff's Allegations

GTT operates a global communications network, providing telecommunications services to large, multinational enterprises, carriers, and governments. In 2018, GTT acquired Interoute Communications Holdings S.A.

---

[2] Proposed versions of the Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim.

2

("Interoute"), a European telecommunications company, for $2.3 billion. This was the largest and most important acquisition in the Company's history. Plaintiff alleges that the massive integration of Interoute with GTT quickly turned disastrous on multiple levels, including significant problems with the Company's internal controls. Plaintiff alleges that GTT's internal controls over financial reporting were inadequate throughout the Class Period including, but not limited to, in connection with the Interoute acquisition. Plaintiff alleges that these problems led to years of inaccurate financial reporting.

On August 10, 2020, the Company announced that it would delay filing its quarterly report because it had identified "certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls." On this news, GTT shares fell over 11%. Through the end of the Class Period, the Company failed to file any quarterly or annual reports with the SEC. In December 2020, GTT announced that the Company's Board of Directors had concluded that the Company's previously issued financial statements for the years 2017-2019, and each of the quarters from 2018 through the first quarter of 2020, as well as the Company's disclosures related to these financial statements, including management's assessments of internal control over financial reporting and evaluation of disclosure controls and procedures, should no longer be relied upon. The Company estimated that the identified accounting errors accounted for tens of millions of dollars, and significant portions of the Company's total net losses. In July 2021, after nearly a year had passed without GTT filing its restated financials for the affected periods or filing any subsequent quarterly or annual report with the SEC, the NYSE delisted GTT.

**B.     Procedural History and Settlement**

Two putative securities class actions were filed on January 12, 2021 and January 29, 2021, respectively, alleging violations of Sections 10(b) and 20(a) of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

the Securities Exchange Act of 1934 ("Exchange Act"). On April 12, 2021, the Court consolidated the actions and appointed Arthur Capital Inc. as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Dkt. No. 31. On June 7, 2021, the Parties requested that the Court stay the outstanding filing deadlines pending a mediation, and the Court granted the stay. Dkt. Nos. 38-39.

The Parties attended an all-day, virtual mediation with Jed Melnick, Esq. of JAMS on July 6, 2021. Prior to the mediation, the Parties exchanged detailed mediation statements. The Parties were unable to reach an agreement at the mediation, but they continued productive settlement discussions with the guidance of Mr. Melnick over the following weeks. On August 3, 2021, the Parties notified the Court that they had reached a settlement in principle, that Plaintiff would file an amended complaint, and that the Parties would work to formally document the settlement. Dkt. No. 42. On August 9, 2021, the Parties executed a Memorandum of Understanding with respect to the Settlement. On August 17, 2021, Plaintiff filed the Complaint. Dkt. No. 44.

## III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In preliminarily approving the proposed Settlement, the Court must consider whether to certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff requests that the Court preliminarily certify a Settlement Class consisting of "all persons other than Defendants who acquired GTT publicly traded securities from May 5, 2016 through July 30, 2021, both dates inclusive, and who were damaged thereby." Stipulation ¶ 1.37 (defining "Settlement Class" and detailing other exclusions).

Courts in the Ninth Circuit, including this Court, routinely certify class actions such as this one, alleging violations of the federal securities laws. *See, e.g., Turocy v. El Pollo Loco Holdings, Inc.*, No. 15-cv-1343-DOC-KESx, 2018 WL 3343493 (C.D. Cal. July 3, 2018) (Carter, J.); *In re Silver Wheaton Corp. Sec.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

*Litig.*, No. 2:15-cv-05146-CAS-JEMx, 2017 WL 2039171 (C.D. Cal. May 11, 2017). The Court should preliminarily certify the Settlement Class to permit notice to Settlement Class Members.

### A.    The Settlement Class Satisfies Rules 23(a)

Rule 23 governs class certification and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of those of the class ("typicality"); and (4) the representative party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

### 1.    Numerosity

For numerosity purposes, "impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). "As a general rule, classes of forty or more are considered sufficiently numerous." *Id.*, 2013 WL 12126754 at *2.[3] In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises purchasers of GTT securities, which traded on the NYSE during the Class Period. Thus, the Settlement Class satisfies numerosity.

### 2.    Commonality

The "commonality requirement is generally construed liberally," and even one significant common issue of law or fact may suffice to show commonality.

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. 07-cv-7114-CAS-FMOx, 2010 WL 11507255, at *3 (C.D. Cal. Aug. 27, 2010). This case involves several common questions of law and fact, including: (1) whether Defendants made false or misleading public statements or omissions during the Class Period; (2) whether Defendants acted with scienter; (3) whether Defendants' misrepresentations artificially inflated the market price of GTT securities during the Settlement Class Period; and (4) whether Settlement Class Members were damaged by Defendants' statements and omissions. Commonality is satisfied even though the amount to which each class member is entitled will differ, because the issues described above are each common to the Settlement Class. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)"). Thus, the Settlement Class satisfies commonality.

### 3.   Typicality

The typicality requirement ensures that the interests of the representative plaintiff align with those of the Class. *Silver Wheaton*, 2017 WL 2039171 at *7. "[T]ypicality is satisfied if the plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Plaintiff's claims are reasonably co-extensive with those of the Settlement Class. Plaintiff purchased GTT securities during the Settlement Class Period and suffered significant losses thereby. *See* Dkt. No. 11-2 (Plaintiff's certification). There is no indication that Plaintiff's claims are atypical of those of the Settlement Class, or that a unique defense applies to Plaintiff's claims. *See Semtech*, 2010 WL

11507255 at *4-5 (finding typicality was met despite certain unique factors). Thus, Plaintiff satisfies the typicality requirement.

### 4.     Adequacy

A representative plaintiff is adequate if they have no conflicts of interest with the class and show that they and their counsel will prosecute the action vigorously on behalf of the class. *Semtech*, 2010 WL 11507255 at *5. Plaintiff has submitted a declaration consistent with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), indicating that it reviewed the complaint and is willing to represent the Class. Dkt. No. 11-2. There is no indication of any conflict of interests between Plaintiff and the Settlement Class, thus Plaintiff is an adequate class representative. *Silver Wheaton*, 2017 WL 2039171 at *7-8.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has been involved in this action from the beginning, conducting a pre-filing investigation, filing an initial complaint, retaining an investigator to interview former GTT employees, reviewing the pleadings in a partially overlapping prior action which included information gathered during discovery, retaining a damages expert to evaluate the case, preparing a mediation statements, participating in a mediation and continued settlement discussions, filing an amended complaint, formalizing the settlement, and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases to determine when a settlement would be beneficial to the class, and when to continue litigating. This Court and others around the country have

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

consistently found Rosen Law to be well-suited as class counsel in securities class actions. *See El Pollo Loco*, 2018 WL 3343493, at *7 (appointing Rosen Law as class counsel); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"). Lead Counsel will adequately represent the Settlement Class.

## B. The Settlement Class Satisfies Rule 23(b)(3)

Plaintiff requests that the Court preliminarily certify the Settlement Class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority").

### 1. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) and 625 (1997). Here, no question exists that issues surrounding Defendants' alleged misconduct, such as whether their statements were false or misleading, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiff and the Settlement Class, are common to each member of the Settlement Class. Predominance is satisfied where a plaintiff alleges that, as here, "many purchasers have been defrauded over time by similar misrepresentations." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006).

8

Allegations arising under the federal securities laws typically support a finding of predominance as they arise out of common questions and issues. *China Med.*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class."); *Zynga*, 2015 WL 6471171, at *7 (for securities class actions, the "same set of operative facts and a single proximate cause applies to each proposed class member."). While the amount of damages may differ among members of the Settlement Class, Plaintiff contends that liability and the proper measure of damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Thus the Settlement Class satisfies predominance.

### 2.     Superiority

For a settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors support certification. As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. A

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

class action avoids the duplication of efforts and inconsistent rulings. *Zynga*, 2015 WL 6471171, at *7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."). By avoiding repetitious litigation and efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement. The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

### C. Ascertainability

The Ninth Circuit has recognized that certification of settlement classes requires "heightened attention to the definition of the class." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019). A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Rarely are there definitional issues for securities class actions settlements as proposed classes for these actions and settlements are definite and ascertainable. Here, the proposed class is clearly defined as investors who acquired publicly traded GTT securities during the Settlement Class Period. *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) (finding the class definition "satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Thus, the Settlement Class definition is suitable for certification and satisfies ascertainability.

### IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned." *Hyundai*, 926 F.3d at 556; *In*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

*re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("the Ninth Circuit has a strong judicial policy that favors [approving] settlements, particularly where complex class action litigation is concerned.") (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.")).

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, in that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, the Ninth Circuit uses the following factors for preliminary approval, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and

11

the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[4]

A preview of the factors considered by courts in granting final approval demonstrates that this Settlement is well within the range of possible approval. The proposed Settlement easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors. The Court will likely be able to approve the Settlement as fair, reasonable and adequate.

### A.    Plaintiff and Lead Counsel Adequately Represented the Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth Circuit requires courts to resolve two questions to determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff and Lead Counsel have adequately represented the Settlement Class throughout this Action. Plaintiff has no antagonistic interests to other class members, its claims are typical of Settlement Class Members' claims, and Plaintiff shares an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Further, Plaintiff has worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for itself and the Settlement Class.

---

[4] Before notice of the Settlement is disseminated, it is not possible to gauge the reaction of the class. Plaintiff, however, supports the Settlement.

12

As discussed above, Plaintiff retained highly experienced counsel with a successful track record of representing investors in similar securities cases. *See also* Dkt. No. 11-4 (Rosen Law Firm Resume). Lead Counsel has vigorously prosecuted the Action, and will continue to do so through the settlement approval and distribution process.

## B. The Settlement is the Product of Arm's-Length Negotiations

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The use of an experienced mediator further supports satisfaction of this factor. *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The proposed Settlement followed hard-fought litigation and arm's-length negotiations. The Parties exchanged detailed mediation statements, presenting, among other things, their respective views on the merits of the Action, including Defendants' defenses and issues relating to causation and damages. The Parties participated in a mediation session with Jed Melnick, Esq. of JAMS, who has substantial experience mediating securities class actions such as this one. The Parties were unable to come to terms at the mediation session, but with Mr. Melnick's continued assistance, the Parties continued productive settlement discussions and reached an agreement in principle one month later. *China Med.*, 2013 WL 12126754, at *5 (that the parties reached a settlement as a result of mediation before Mr. Melnick weighs in favor of approval). The negotiations were at all times adversarial and conducted at arm's length.

## C. The Relief Provided to the Class is Adequate

Pursuant to Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This requirement incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021) (*citing Hanlon*, 150 F.3d at 1026). These factors support preliminary approval of the Settlement.

**1.    The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation**

In assessing whether the Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *Officers for Justice*, 688 F.2d at 625. The risks of continued litigation here are considerable. The PSLRA made the pleading stage of securities litigation a "technical and demanding corner of the law." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Amended Complaint has not yet been tested by a motion to dismiss, and there are distinct risks here to protracted litigation. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain.").

Defendants deny any wrongdoing and would present a multi-pronged defense. Plaintiff and Lead Counsel believe that the case has merit, but they

14

recognize the significant risk and expense that would be necessary to prosecute Plaintiff's claims successfully through a motion to dismiss, class certification, extensive discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial."). Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."); *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval).

Even if Plaintiff defeated Defendants' anticipated motion to dismiss, continued litigation would be complex, uncertain, costly, and lengthy. Further litigation would likely require extensive document discovery, depositions of numerous witnesses, submitting expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without certainty of the outcome. By contrast, the Settlement provides a favorable, immediate recovery and eliminates the risk, delay,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.

The Settlement resulted from balancing the risks, costs, and delay inherent in complex cases with respect to all parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the $2 million Settlement is a reasonable and adequate recovery that is in the Settlement Class's best interests.

### 2. Risk of Maintaining Class Action Status Through Trial

The Settlement was reached before Plaintiff moved for class certification. While Plaintiff believes that class certification would be appropriate (*see* Section III, *supra*), it cannot be assured, and Defendants could attempt to alter or amend a class certification order. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

### D. The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

### 1. The Methods of Distributing Relief and Processing Claims

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for

16

processing claims and efficiently distributing the Net Settlement Fund. Plaintiff requests that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator. If SCS is appointed it will, under Lead Counsel's guidance, process claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice. The method proposed here is both effective and necessary, as neither Plaintiff nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund.

### 2. Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees not to exceed 30% of the Settlement, or $600,000. An award of attorneys' fees of up to 30% of the Settlement Amount is reasonable and consistent with the fees awarded in similar actions in this Circuit, including by this Court. *E.g., Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) (Carter, J.) (awarding 28% of $2.5 million settlement); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (awarding one-third of $2,050,000 settlement fund where settlement was reached as a motion to dismiss was still pending). Lead Counsel will receive no payment, and has not, until after the Court issues an order awarding attorneys' fees following the Settlement Hearing.

### 3. Other Agreements

The Parties also executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons opting out reaches a certain threshold, GTT may terminate the Settlement. Stipulation ¶10.3. The terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the

threshold to exact an individual settlement. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at \*15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.")

### E. The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiff. The Plan of Allocation proposed in the Long Notice provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in GTT securities during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold shares of GTT securities. The Plan of Allocation was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiff's damages expert. Settlement Class Members' recoveries will be based upon the relative losses they sustained.

Plaintiff will receive a *pro rata* distribution from the Net Settlement Fund per the plan of allocation, just like all other Settlement Class Members. *Nguyen*, 2014 WL 1802293, at \*5 ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

18

Plaintiff will also seek reimbursement of costs it incurred representing the Settlement Class, as authorized by the PSLRA. *Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action settlement).

### F.     The Remaining Ninth Circuit Factors Favor Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2). These factors support preliminary approval.

### 1.     The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler*, 2018 WL 4207245, at *9. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Vikram v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019) ("This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case"). A settlement must be evaluated in the context of recognizing that parties must make compromises to reach an agreement. *Officers for Justice*, 688 F.2d at 624.

The $2 million Settlement Amount is reasonable and warrants preliminary approval. The Settlement recovers approximately 10% of the maximum estimated damages of $20.4 million under Plaintiff's best-case scenario, as estimated by Plaintiff's damages expert. This best-case scenario assumes that: (i) Plaintiff is able to succeed on a motion to dismiss, at summary judgment, and at trial; (ii) the Court certifies the same class period as the Settlement Class Period; and (iii) the Court and jury accepted Plaintiff's damages theory, including proof of loss causation.

Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

Moreover, the $2 million Settlement is an extremely favorable result because Defendants only had approximately $6 million of insurance available after extensive litigation and settlement of a partially-overlapping securities class action.[5] Continuing to litigate this Action would have depleted the available insurance funds, typically the main source for funding a judgment or settlement, and thus may have resulted in a smaller recovery, or none at all. Moreover, GTT's public filings since December 2020 have discussed an impending bankruptcy filing, which would halt any further litigation, and likely bar any direct recovery against GTT. Thus, a larger recovery was highly unlikely had litigation continued.

The percentage of maximum damages recovered is reasonable and well within the range of other securities class action settlements with similar total damages. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."). According to Cornerstone Research, approximately 13% of securities class actions settled for less than $2 million in 2020, and the median recovery in cases such as this one alleging Rule 10b-5 claims was approximately 5.3% of estimated damages in 2020, and 4.9% between 2011-2019.[6]

---

[5] *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc. et al.*, Case No. 1:19-cv-982 (E.D. Va.) ("2019 Action").

[6] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2020 Review and Analysis (Cornerstone Research), at 6 and 18, *available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis

20

### 2.      The Extent of Discovery and Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing GTT's public SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning GTT including research reports by securities and financial analysts; (iii) reviewing the pleadings and filings in the 2019 Action, including an amended complaint filed after extensive document discovery in the 2019 Action; and (iv) retaining an investigator to independently interview former GTT employees and other third parties.

Although formal discovery has not commenced in this Action, Plaintiff's allegations have substantial factual overlap with the 2019 Action. The plaintiff in the 2019 Action filed a second amended complaint after reviewing over 400,000 pages of documents produced by GTT and some of the same Defendants. Lead Counsel used parts of the second amended complaint from the 2019 Action to assist in evaluating the Action and the eventual Settlement here. Lead Counsel's efforts allowed them to make an informed assessment of the strengths and weaknesses of this Action, essential to determining on behalf of the Settlement Class whether to settle. Reviewing Defendants' mediation statement and negotiating the Settlement during and after the mediation further informed Lead Counsel about the strengths and weaknesses of Plaintiff's claims and Defendants' defenses. As a result, Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS

and Lead Counsel had an ample understanding of the merits and weaknesses of this Action and the reasonableness of the Settlement.

### 3. Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). Lead Counsel have extensive securities litigation experience and obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's support for the reasonableness of this Settlement supports preliminary approval. Defendants are represented by skilled securities practitioners at Cravath, Swaine, & Moore LLP, who were at least as well-informed regarding the case, and their representation of Defendants was equally vigorous. That experienced and informed counsel agreed to the Settlement supports preliminary approval.

## V. THE COURT SHOULD APPROVE THE NOTICE PLAN

**The Notice Plan is Adequate:** Rule 23(e) requires that notice of the Settlement be provided to Settlement Class Members in such manner as the Court directs. The proposed Notice Plan includes: (1) emailing links to the Long Notice and Proof of Claim, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (2) posting the Long Notice, Proof of Claim, and Stipulation on a Settlement website maintained by SCS; (3) allowing Settlement Class Members to submit their claims electronically at the Settlement website; (4) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (5) publishing the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily.*

Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website). Defendants will provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq*.

**The Notice is Adequate:** As required by Rule 23(c)(2), the Notice will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and the right of Settlement Class Members to opt out or object to the Settlement, Plan of Allocation, and/or the proposed attorneys' fees and expenses. The Ninth Circuit has held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication. *See, e.g., In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *23–24 (S.D.N.Y. Dec. 23, 2009).

The proposed Long Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. In plain English, the proposed Long Notice provides: (a) the rights of Settlement Class Members, including the manner in which objections may be lodged and exclusions may be requested and instructions on how to complete and submit a Proof of Claim to the Claims Administrator; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan; (f) the maximum fees and expenses and award to

23

Plaintiff to be sought by Lead Counsel; (g) the definition of the Settlement Class; (h) the reasons the Parties have proposed the Settlement; (i) the estimated distribution per damaged share; (j) the Settlement Class's claims and issues; (k) the Parties' disagreement over damages and liability; (l) contact information for all counsel and the Court; and (m) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of up to 30% of the Settlement Amount, reimbursement of expenses of up to $65,000, and an award to Plaintiff of up to $7,500, all to be paid from the Settlement Fund.

Accordingly, the Notice Plan and the Notice each satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VI. THE PROPOSED SCHEDULE

Plaintiff respectfully proposes the following procedural schedule. The schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiff requests the Court use at least the same or greater intervals between each event listed in the schedule to allow sufficient time to comply with the Preliminary Approval Order.

24

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | At least 100 days from Preliminary Approval Order (Preliminary Approval Order ¶6) |
| Emailing link to Settlement webpage with Long Notice and Proof of Claim; Mailing the Postcard Notice | Within 20 Business Days following Prelim. App. Order (Preliminary Approval Order ¶14) |
| Posting the: Stipulation; Preliminary Approval Order; Long Notice; and Proof of Claim on the Settlement website. | Within 16 days following entry of the Prelim. App. Order (Preliminary Approval Order ¶17) |
| Publication of the Summary Notice. | Within 10 days from emailing link to Long Notice/Mailing Postcard (Preliminary Approval Order ¶18) |
| Plaintiff to file papers in support of the Settlement, the Plan, and motion for attorneys' fees and expenses. | No later than 28 days prior to Settlement Hearing (Preliminary Approval Order ¶30) |
| Deadline for requests for exclusion and for objections | No later than 21 days prior to Settlement Hearing (Preliminary Approval Order ¶¶22, 26) |
| Deadline for Proof of Claims. | No later than 30 days prior to Settlement Hearing (Preliminary Approval Order ¶20(a)) |
| Plaintiff to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses. | No later than 14 days prior to Settlement Hearing (Preliminary Approval Order ¶31) |

## VII.   CONCLUSION

For the foregoing reasons, the Court should enter the Preliminary Approval Order, which will: (a) preliminarily certify the Settlement Class; (b) preliminarily approve the Settlement; (c) approve the Notice Plan and direct dissemination of the Notice; and (d) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

25

Dated: October 29, 2021            **THE ROSEN LAW FIRM, P.A.**

By: */s/ Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On October 29, 2021, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on October 29, 2021.

*/s/ Laurence M. Rosen*
Laurence M. Rosen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; 2:21-cv-00270-DOC-AS