Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and
the Class*

[*additional counsel on signature page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GTT Communications, Inc. Securities Litigation | Master File No. 2:21-cv-00270-DOC-AS |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS** |
| | CLASS ACTION |
| | Date: March 21, 2022<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. David O. Carter |
| This Document Relates To: All Actions | |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................1

II. CASE BACKGROUND...................................................................................3

   A. Plaintiff's Allegations ...............................................................................3

   B. Procedural History ....................................................................................4

III. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED .........4

   A. The Settlement Class Satisfies All Requirements of Rule 23(a) .....................5

   B. The Settlement Class Satisfies All Requirements of Rule 23(b)(3) ................7

IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ...........8

   A. The Overall Strength of Plaintiff's Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement ...................................................................................9

      1. Plaintiff Faced the Risk of Dismissal....................................................10

      2. Plaintiff Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial........................................................10

      3. Plaintiff Faced Additional Risks of Continued Litigation ......................11

   B. The Amount Obtained in Settlement Supports Final Approval .....................13

   C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval ...........................................................................................15

   D. The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel...........................................17

   E. The Favorable Reaction of the Settlement Class Supports Approval ............19

   F. The Settlement Meets the Remaining Rule 23(e)(2) Factors .........................21

      1. The Proposed Method for Distributing Relief Is Effective.....................21

      2. The Proposed Award of Attorneys' Fees is Appropriate.......................22

i

3.  The Parties Have No Other Agreements Besides Opt-Outs ....................22

4.  There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably ............................................................23

G.  The Court Should Approve the Plan of Allocation ........................................23

V.  NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS.........24

VI.  CONCLUSION..................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................7

*Baker v. SeaWorld Ent., Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020)..........25

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................................................................................................11

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .....................................................................................7

*Christine Asia Co. v. Yun Ma*,
No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............19

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)....................................................................20

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................20

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................10

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................................10

*Evans v. Jeff D.*,
475 U.S. 717 (1986)...................................................................................................8

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................9, 13, 21

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)..................22

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ........................................................................14

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................12

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal. May 16, 2013) ...........6

*In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX),
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014)........................................................18

*In re Cooper Companies Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009).........................................................................7

*In re Critical Path, Inc.*,
   No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ................16

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ......................24

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001)...................................................................24

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................15

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...10, 12, 15, 18

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..........................................................17, 25

*In re LJ Int'l, Inc. Sec. Litig.*,
   No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009).........10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...............................................................8, 13, 15, 16

I-iv

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010) ......................................................................... 12

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................. 8, 15, 19, 23

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) .................................................................................... 12

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...................................................................................... 18

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................... 25

*In re Portal Software, Inc. Sec. Litig.*,
No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................... 17

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014) ....................................................................... 12

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................. 19

*In re Regulus Therapeutics Inc. Sec. Litig.*,
No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........ 15

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017) ...... 5, 6

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................ 10, 20

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .................................................................................... 8

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................... 23

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................. 17

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...........16

*Kamakana v. City & Cty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ........................................................................22

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................6, 18

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .............................................................................9

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..........................................................................16

*Low v. Trump Univ., LLC*,
246 F. Supp. 3d 1295 (S.D. Cal. 2017) ..............................................................9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 2:10-CV-00302 MRP, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013)...............20

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) ..5, 6, 7

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)...............................................................13, 18, 19

*Nguyen v. Radient Pharm. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012)........................................................................6

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .........................................................................9, 13

*Pace v. Quintanilla*,
No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............18

*Rieckborn v. Velti PLC*,
No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015).............14, 16

*Riker v. Gibbons*,
No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .........17, 23

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................ 13

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................... 25

*Salazar v. Midwest Servicing Grp., Inc.*,
No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ................ 9

*Satchell v. Fed. Express Corp.*,
No. C 03 2878 SI,2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................ 17

*Tom v. Com Dev USA, LLC*,
No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) .............. 9

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ........................................................... 8, 9, 14

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .................................................................... 10

*Destefano v. Zynga, Inc.*, *Zynga*,
No. 12-CV-04007-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) ........ 20

**Statutes**

15 U.S.C. § 78u-4(a)(4) .......................................................................... 22

15 U.S.C. § 78u-4(a)(7) .......................................................................... 25

**Rules**

Fed. R. Civ. P. 23 .......................................................................... passim

Fed. R. Civ. P. 23(a) .............................................................................. 5

Fed. R. Civ. P. 23(b)(3) ....................................................................... 5, 7

Fed. R. Civ. P. 23(c)(1) .......................................................................... 11

Fed. R. Civ. P. 23(e) ....................................................................... 2, 8, 9

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................... 24

Fed. R. Civ. P. 23(e)(2)......................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii) .........................................................................21

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................21

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................22

Fed. R. Civ. P. 23(e)(2)(D) ..............................................................................23

Fed. R. Civ. P. 23(e)(3).......................................................................................8

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995)..................................19

Lead Plaintiff Arthur Capital Inc. ("Plaintiff") submits this memorandum in support of its Motion for Final Approval of the Settlement and Plan of Allocation, and Final Certification of the Settlement Class.[1]

# I.   INTRODUCTION

Plaintiff and Defendants GTT Communications, Inc. ("GTT" or the "Company"), Richard D. Calder, Jr., Ernie Ortega, Michael T. Sicoli, Daniel M. Fraser and Steven Berns ("Defendants" and with Plaintiff, the "Parties") reached a settlement of this securities class action for a cash payment of $2,000,000 ("Settlement"). The Settlement, reached only after protracted arm's-length negotiations, is a fair, reasonable, and adequate result, recovering approximately 10% of the maximum estimated damages of $20.4 million under Plaintiff's best-case scenario as estimated by Plaintiff's damages expert, despite significant risk. Plaintiff now seeks final approval of the Settlement. If approved, the Settlement will completely resolve the Action, settling all claims of Settlement Class Members who have not submitted valid requests for exclusion. The Settlement provides a substantial recovery to the Settlement Class despite several obstacles that Plaintiff faced, including the amount of potentially recoverable damages, Defendants' potential defenses, Defendants' ability to pay a larger amount, and the risks of prosecuting this litigation through trial and appeals.

The terms of the Settlement are set forth in the Stipulation. In the Court's Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 54), the Court preliminarily approved the

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement, filed on October 29, 2021 ("Settlement" or "Stipulation") (Dkt. No. 48). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Craig Decl." are to the Declaration of Margery Craig, attached as Exhibit 2 to the Rosen Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff, filed herewith.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

Settlement, preliminarily certified the Settlement Class for settlement purposes, and directed that notice be disseminated to potential members of the Settlement Class.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e). Plaintiff believes its case is strong, but it determined that executing the Settlement was in the best interests of the Settlement Class, especially given the risks inherent in this complex litigation. Even if Plaintiff survived an anticipated motion to dismiss, it faced other material obstacles to proving its claims, such as prevailing at class certification, summary judgment, and trial. GTT also declared bankruptcy, which would make any further recovery difficult, uncertain, and delayed.[2] Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiff agreed to an early resolution of this action as the best outcome for the Settlement Class. Through protracted negotiations with Defendants, Plaintiff obtained a Settlement that is fair, reasonable, and adequate under the circumstances. The Settlement eliminates the risks of continued litigation and locks in a substantial cash recovery for the Settlement Class. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation ("Plan") is fair, reasonable, and adequate. Here, Lead Counsel developed the proposed Plan in consultation with Plaintiff's damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and Plaintiff's theory of damages, and in no way favors Plaintiff over other members of the Settlement Class. The Court should approve the Plan.

---

[2] The Bankruptcy Court granted the Parties' request to lift the automatic stay for the purposes of proceeding and implementing this Settlement. *See* Dkt. No. 53.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

## II.    CASE BACKGROUND

### A.    Plaintiff's Allegations

GTT operates a global communications network, providing telecommunications services to large, multinational enterprises, carriers, and governments. In 2018, GTT acquired Interoute Communications Holdings S.A. ("Interoute"), a European telecommunications company, for $2.3 billion. This was the largest and most important acquisition in the Company's history. Plaintiff alleges that the massive integration of Interoute with GTT quickly turned disastrous on multiple levels, including significant problems with the Company's internal controls. Plaintiff alleges that GTT's internal controls over financial reporting were inadequate throughout the Class Period including, but not limited to, in connection with the Interoute acquisition. Plaintiff alleges that these problems led to years of inaccurate financial reporting.

On August 10, 2020, GTT announced that it would delay filing its quarterly report because it had identified "certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls." On this news, GTT shares fell over 11%. Through the end of the Class Period, GTT failed to file any quarterly or annual reports with the SEC. In December 2020, GTT announced that the Company's Board of Directors had concluded that the Company's previously issued financial statements for the years 2017-2019, and each of the quarters from 2018 through the first quarter of 2020, as well as the Company's disclosures related to these financial statements, including management's assessments of internal control over financial reporting and evaluation of disclosure controls and procedures, should no longer be relied upon. GTT estimated that these accounting errors accounted for tens of millions of dollars, and significant portions of the Company's total net losses.

In July 2021, after nearly a year had passed without GTT filing its restated financials for the affected periods or filing any subsequent quarterly or annual report with the SEC, the NYSE delisted GTT.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

**B.    Procedural History**

Two putative securities class actions were filed on January 12, 2021 and January 29, 2021, respectively, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). On April 12, 2021, the Court consolidated the actions and appointed Arthur Capital Inc. as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Dkt. No. 31. On June 7, 2021, the Court granted the Parties' request to stay deadlines pending a mediation. Dkt. Nos. 38-39.

The Parties attended an all-day, virtual mediation with Jed Melnick, Esq. of JAMS on July 6, 2021. Prior to the mediation, the Parties exchanged detailed mediation statements. A settlement was not reached at the mediation, but the Parties continued productive settlement discussions with Mr. Melnick's guidance over the following weeks. On August 3, 2021, the Parties notified the Court that they had reached a settlement in principle, that Plaintiff would file an amended complaint, and that the Parties would work to formally document the settlement Dkt. No. 42. On August 17, 2021, Plaintiff filed the Amended Complaint Dkt. No. 44.

On October 29, 2021, Plaintiff moved for preliminary approval of the Settlement. Dkt. No. 46. GTT and certain of its subsidiaries filed voluntary petitions for bankruptcy relief on October 31, 2021. Dkt. No. 50. Pursuant to the Settlement, the Parties sought and obtained relief from the bankruptcy court to lift the automatic bankruptcy stay with respect to GTT for the purposes of proceeding with the approval and implementation of the Settlement. Dkt. No. 53. Once the stay was lifted, the Court entered the Preliminary Approval Order on December 6, 2021. Dkt. No. 54.

**III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 54 ¶2. As detailed in Plaintiff's brief in support of preliminary approval of the Settlement, Dkt. No. 47, certification of the Settlement Class under Rule 23 is merited here. No pertinent changes have transpired

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

since the Court issued the Preliminary Approval Order. Thus, the Court should certify the Settlement Class for settlement purposes.

Certification of a settlement class is appropriate where the proposed class and class representative meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); Dkt. No. 47 (preliminary approval brief). Certifying a class action for damages also requires a showing under Rule 23(b)(3) of predominance and superiority. Fed. R. Civ. P. 23(b)(3).

The Parties stipulated to the certification of the Settlement Class for settlement purposes. Stipulation ¶9.1. The Settlement Class, conditionally certified in the Preliminary Approval Order, comprises "all persons other than Defendants who acquired GTT publicly traded securities from May 5, 2016 through July 30, 2021, both dates inclusive, and who were damaged thereby." *Id.* ¶1.37.[3] No relevant circumstances have changed since the Court's preliminary certification of the Settlement Class that should cause this Court to undo its certification.

Courts in the Ninth Circuit routinely certify class actions alleging securities fraud. *See, e.g., In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010). Here, the proposed Settlement Class meets all the requirements of Rules 23(a) and 23(b)(3). Thus, the Court should grant final certification of the Settlement Class.

### A. The Settlement Class Satisfies All Requirements of Rule 23(a)

First, the Settlement Class is sufficiently numerous. In the Ninth Circuit, "classes of 40 or more are numerous enough." *Silver Wheaton*, 2017 WL 2039171, at *6. In

---

[3] Excluded from the Settlement Class are: "(a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time." *Id.*

cases involving nationally traded stocks, like GTT, where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *see also Silver Wheaton*, 2017 WL 2039171, at \*6.

Second, the conduct alleged in the Amended Complaint was common to all members of the Settlement Class. All Settlement Class Members otherwise acquired GTT securities during the Settlement Class Period, at prices artificially inflated by Defendants' alleged misrepresentations, and were damaged when the truth was revealed. That is sufficient to show commonality. *Semtech*, 2010 WL 11507255, at \*3.

Third, Plaintiff's claims are typical of those of the rest of the Settlement Class. Plaintiff acquired GTT securities during the Settlement Class Period and suffered significant losses thereby. *See* Dkt. No. 11-2 (Plaintiff's certification). No evidence exists indicating that Plaintiff's claims are atypical of the Settlement Class or that any unique defenses apply to its claims. *See Semtech*, 2010 WL 11507255 at \*4-5 (finding typicality was met despite certain unique factors). Plaintiff thus satisfies the typicality requirement.

Fourth, Plaintiff is an adequate representative of the Settlement Class, and Lead Counsel, Rosen Law, are adequate counsel. Plaintiff has been diligent in monitoring this Action and supervising Lead Counsel. *See* Rosen Decl., Exhibit 4 (Declaration of Joseph Rathbun) ("Rathbun Decl."). No evidence exists of any conflicts of interest between Plaintiff and the other Settlement Class Members. *Silver Wheaton*, 2017 WL 2039171 at \*7-8. Rosen Law is experienced in prosecuting similar securities fraud class actions and has skillfully litigated this Action through the pleadings stage. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at \*4 (C.D. Cal. May 16, 2013); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"). Plaintiff and Rosen Law thus satisfy the adequacy requirement.

6

**B.      The Settlement Class Satisfies All Requirements of Rule 23(b)(3)**

Class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the Action – whether Defendants made public misrepresentations of material facts with scienter, artificially inflating the price of securities – is the central issue and predominates over any theoretical individual issue that may arise. The common resolution of these issues supports a finding of predominance. *Semtech*, 2010 WL 11507255, at \*7; *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

The class action is also the best method of resolving this Action. For certification of a settlement class, as Plaintiff seeks here, the Court is not required to analyze each superiority factor in great detail. *Amchem*, 521 U.S. at 620. A court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Id.* The Ninth Circuit has long recognized that class actions are a superior way to pursue securities fraud actions. "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Id.*

The Court should grant final certification because the Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

7

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23 requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and  appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the

8

presence of a government participant[4]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, the Rule 23(e) and Ninth Circuit factors weigh in favor of final approval.

### A. The Overall Strength of Plaintiff's Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Torrisi*, 8 F.3d at 1375–76 (finding that "the cost, complexity and time of fully litigating the case" supported approval). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Securities actions are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Lead Counsel and Plaintiff carefully evaluated the merits of this case in light of the risks and potential weaknesses before entering into the Settlement.

While Plaintiff believes that its case is strong, it remains cognizant of the substantial risk posed to the Settlement Class in continuing to litigate this action. *See*

---

[4] There was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class's ultimate recovery be less than the proposed settlement).

### 1.   Plaintiff Faced the Risk of Dismissal

Securities class action plaintiffs face myriad procedural hurdles. Failing at any one stage of the litigation could defeat the class action. While a motion to dismiss the Amended Complaint had not yet been filed at the time of the Settlement, Defendants likely would have asserted challenges to falsity, scienter, and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). To plead scienter, Plaintiff must allege that Defendants made false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter is difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009).

While Plaintiff believes its arguments opposing an anticipated motion to dismiss are strong, there is no guarantee it would prevail before the Court. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes heightened pleading burdens on securities fraud plaintiffs that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2.   Plaintiff Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial

Even if Plaintiff defeated the anticipated motion to dismiss, it would still need to undertake the complex and expensive task of obtaining certification of the putative class. One of the more difficult elements of class certification to satisfy is showing that class-wide issues, such as reliance on Defendants' misrepresentations, predominate

10

over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiff would need to prove that GTT traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into GTT's stock price.

To satisfy the *Basic* presumption, Plaintiff would need to hire an expert economist to conduct an event study showing the price reaction of GTT securities to new, material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. Rosen Decl. ¶36. Defendants would likely contest the efficiency of the market for GTT securities and whether the fraud impacted the price of GTT securities. Defendants would present their own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiff would need to produce and review documents, sit for a deposition, and take the opposing expert's deposition.

Even if Plaintiff obtained class certification, it faced a risk that it would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." A class is not safely certified until judgment. *Omnivision*, 559 F. Supp. 2d at1041 ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). While rare, a change in the law or facts might upset certification. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court may have denied certification, supports the Settlement's adequacy.

### 3.   Plaintiff Faced Additional Risks of Continued Litigation

Even if Plaintiff overcame these substantial hurdles, there is no question that further litigation would be risky, complex, and expensive. First, it would need to engage in formal fact discovery, requiring review of thousands of documents covering a five-year class period and taking depositions of Defendants, GTT employees, and non-parties. Rosen Decl. ¶38. Plaintiff would appreciate some benefit in following the

11

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

discovery undertaken (but not completed) in the 2019 Action, but additional discovery tailored to this Action would be necessary given the different claims and relevant time periods. *Id*. After the close of fact discovery, the Parties would engage in expert discovery on the questions of loss causation and damages and the application of accounting standards. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud. *Id.* ¶36. All told, expert discovery and trial preparation would prove expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6.

Even if Plaintiff prevailed on class certification, Plaintiff might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). Plaintiff might have an expert excluded, damaging its case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiff might also lose at trial, or the jury might reduce damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested).[5] Plaintiff might still lose its case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiff survives

---

[5] *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

summary judgment and motions to exclude its experts, wins at trial, secures a verdict for its damages, and then defends the verdict from Defendants' inevitable post-trial motions, Plaintiff might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict).

Accordingly, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

**B.      The Amount Obtained in Settlement Supports Final Approval**

The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiff must take less in a settlement than it would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiff could secure or enforce a judgment at or near the full amount of the class-wide damages it estimates. In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated

damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiff prevailed on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See e.g.*, *Hubbard*, 688 F.3d at 716 (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiff carefully considered the significant risk that it would be unable to recover a greater amount further down the road.

This Action posed an additional practical obstacle for Plaintiff to obtain a greater settlement as GTT filed for bankruptcy protection during the pendency of this Action. Rosen Decl. ¶33. Although even with the Company's bankruptcy Plaintiff would have been able to proceed against the individual Defendants, it is uncertain whether the Settlement Class would be able to recover any insurance proceeds without litigating in bankruptcy court, and whether the individual Defendants could significantly contribute to a settlement. Thus, GTT's financial condition and bankruptcy proceedings supports the reasonableness of the Settlement. *Torrisi*, 8 F.3d at 1376 (district court acted within its discretion when finding the company's financial condition, including bankruptcy proceedings, supported the adequacy of a settlement); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (settlement's reasonableness supported by company's bankruptcy and individual defendants' contribution would be *de minimis*). Moreover, even if Plaintiff were able to secure a claim to GTT's insurance proceeds, untethering them from the bankruptcy proceedings would undeniably delay the litigation and any future recovery to the Settlement Class.

Additionally, even prior to GTT's bankruptcy, there was only approximately $6 million of insurance available after the litigation and settlement of the 2019 Action. Accordingly, it was unlikely that the Settlement Class would be able to recover substantially more without this early Settlement as litigation costs would have quickly eroded the remaining insurance funds.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

The Settlement provides a substantial benefit for Settlement Class Members. The Settlement recovers roughly 10% of Plaintiff's maximum estimated class-wide damages. This recovery is reasonable and falls in line with typical recoveries in other securities class actions. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class's total estimated losses"). According to Cornerstone Research, approximately 13% of securities class actions settled for less than $2 million in 2020.[6] The median recovery in cases such as this one alleging Rule 10b-5 claims was approximately 5.3% of estimated damages in 2020, and 4.9% between 2011-2019. *Id.* Thus, the amount of the Settlement shows it is a reasonable and adequate result.

### C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a

---

[6] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2020 Review and Analysis (Cornerstone Research), at 6 and 18, *available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

During the PSLRA-mandated discovery stay, Lead Counsel reviewed GTT's public filings and statements during the Class Period and other publicly available news reports as well as retained an investigator to interview former GTT employees and third parties. Rosen Decl. ¶43. Although formal discovery had not commenced at the time of Settlement, Lead Counsel reviewed the pleadings and filings in the 2019 Action, including an amended complaint that was filed after plaintiffs in 2019 Action reviewed over 400,000 pages of documents that GTT and some common individual defendants produced. *Id.* By reviewing the 2019 Action's amended pleadings and engaging in their own comprehensive investigation, Lead Counsel was able to make an informed assessment of the claims asserted in this Action.

Through their investigation, as well as their review of Defendants' mediation statement, Lead Counsel determined the scope and strength of the claims Plaintiff could bring on behalf of the putative class, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. *Id.* Through these efforts, Plaintiff and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation. *Id.* Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Rieckborn*, 2015 WL 468329, at *6 (before

decision on motion to dismiss); *Perez v. IZEA, Inc.*, No. 18-cv-02784-SVW-GJS (C.D. Cal. Sept. 26, 2019) (Dkt. No. 50) (before filing of amended complaint). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, at the time of Settlement, Plaintiff and Lead Counsel had acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery). Plaintiff and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a reasonable Settlement, supporting final approval.

**D.      The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it results from arm's-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining"). Here, Plaintiff reached the Settlement after arm's-length negotiations facilitated by an experienced mediator, Jed Melnick of JAMS. *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Mr. Melnick has considerable experience mediating complex, securities class actions. Rosen Decl,

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

Exhibit 1 (Declaration of Jed Melnick, Esq.) ¶¶4-6. Prior to the mediation, the Parties exchanged mediation statements which included, among other things, their respective views on the merits of the Action. The mediation session ended without an agreement, but with Mr. Melnick's continued assistance, the Parties maintained productive settlement discussions and reached an agreement in principle one month later. *Id.* ¶¶11-12. Mr. Melnick's declaration attests to the integrity of the mediation process and recommends the Settlement as being in the best interests of the Settlement Class. *Id.* ¶¶13-14. Mr. Melnick's participation in the Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (that settlement was reached as a result of mediation before Mr. Melnick favors approval).

In addition to the non-collusive, vigorous settlement negotiations, counsel on both sides of this Action are experienced and knowledgeable when it comes to litigating complex, securities class actions. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Heritage Bond*, 2005 WL 1594403, at *9 (in a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation"). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9; *DIRECTV*, 221 F.R.D. at 528.

Rosen Law's experience and reputation allowed it to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. This Court, as well as others, has recognized that Rosen Law "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and]

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

experienced' in securities class actions"); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). Thus, Lead Counsel's experience supports approval. Likewise, Defendants' counsel, Cravath, Swaine & Moore LLP, is a preeminent firm with skilled securities practitioners, who vigorously represented their clients and were equally knowledgeable about the merits of the case.

Finally, Plaintiff's support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate. *See* Rathbun Decl. Plaintiff's support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). The protracted arms' length negotiations and the support of both experienced counsel and Plaintiff favors final approval of the Settlement.

**E.      The Favorable Reaction of the Settlement Class Supports Approval**

The absence of objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

The Claims Administrator mailed over 72,000 copies of the Postcard Notice to potential Settlement Class Members. Craig Decl. ¶5. A nominee also informed the Claims Administrator that they had emailed nearly 40,000 customers to notify them of the Settlement, including links to the Notice and Claim Form on the settlement website.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

*Id.* ¶6. The deadline to file objections is February 28, 2022. To date, no Settlement Class Members have objected to the Settlement. *Id*. ¶15; Rosen Decl. ¶22.

The Claims Administrator received 22 requests for exclusion, but only 15 of these requests are valid under the Preliminary Approval Order. Craig Decl. ¶13; Rosen Decl. ¶¶23-24. With one exception, addressed below, the valid exclusion requests are minimal, as the shares purchased by these potential Settlement Class Members represented less than 0.25% of the shares outstanding at the end of the Settlement Class Period. Craig Decl. ¶14 and Exhibit E; Rosen Decl. ¶26. The small number of exclusion requests supports the Settlement's approval. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supports settlements' approval.); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at \*14 (N.D. Cal. Feb. 11, 2016) (16 valid exclusion requests representing 0.176% of public shares, supported settlement approval); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP, 2013 WL 6577020, at \*16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement).

One potential Settlement Class Member that validly requested exclusion was The Spruce House Partnership LLC ("Spruce House"). The shares of GTT stock purchased by Spruce House (through its affiliate) during the Settlement Class Period represent approximately 12.6% of the shares of GTT stock outstanding. However, the Court should place little weight on Spruce House's request for exclusion with respect to approving the Settlement because Spruce House was differently situated than the rest of the Settlement Class. *See Sumitomo*, 189 F.R.D. at 281 (reaction of class supported settlement when two large traders and small number of other class members representing under 1% of class opted-out of the settlement). Specifically, Spruce House

was unique from other Settlement Class Members because (1) Spruce House (and/or its affiliates) owned as much as 28% of GTT's stock during the Settlement Class Period; (2) Spruce House's two co-founders and managers were directors of GTT during the Settlement Class Period; and (3) in connection with the GTT plan of reorganization that was confirmed by the Bankruptcy Court on December 16, 2021, Spruce House released GTT and other defendants from liability. Rosen Decl. ¶25.

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The absence of any objections and the relatively small number of requests for exclusion supports final approval.

### F. The Settlement Meets the Remaining Rule 23(e)(2) Factors

#### 1. The Proposed Method for Distributing Relief Is Effective

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which Plaintiff and the Claims Administrator duly executed. As the Court directed in the Preliminary Approval Order, the Claims Administrator mailed a Postcard Notice to all those who could be identified with reasonable effort and published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Craig Decl. ¶¶2-10. The Postcard notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Long Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶¶2 (Exhibit A) and 12.

Settlement Class Members are to complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan. The case-specific website also allowed Settlement Class Members to file their claims electronically.

### 2.   The Proposed Award of Attorneys' Fees is Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of 30% of the Settlement Amount, plus interest, and expenses of $40,238.30. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Long Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, part III(C)(5).

Plaintiff also requests $7,500 pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with its representation of the Settlement Class. Plaintiff supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with GTT generally. Plaintiff spent significant time representing the Settlement Class. Rathbun Decl. ¶13. Plaintiff's request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. Fee Brief, part V.

### 3.   The Parties Have No Other Agreements Besides Opt-Outs

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation (¶10.3) and in Plaintiff's brief in support of preliminary approval (Dkt. No. 47 at 17), the Parties entered into a Supplemental Agreement that gives GTT the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt out. Only the agreement's exact terms—specifically, the number of shares that trigger the right to terminate—has not been disclosed to Settlement Class Members. This Supplemental Agreement poses no obstacle to final approval of the Settlement. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). GTT did not exercise its termination option.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

### 4. There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably

Rule 23 requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan determines how the money is distributed to Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Settlement Class member who submits a valid claim based on their recognized losses resulting from the stock price declines during the Settlement Class Period, as alleged in the Amended Complaint. Lead Counsel developed the Plan in consultation with Plaintiff's damages expert, and the Plan closely tracks the theory of the case. Rosen Decl. ¶29. The Plan will determine Plaintiff's recovery just like every other Settlement Class Member, so Plaintiff receives no preferential treatment.

### G. The Court Should Approve the Plan of Allocation

In the Preliminary Approval Order, the Court preliminarily approved the Plan, which was detailed in the Long Notice. Plaintiff now requests that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold GTT securities. Plaintiff engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Rosen Decl. ¶¶29-31. *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation,

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (finding plan of allocation was "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognized loss as calculated in accordance with the Plan. Rosen Decl. ¶30. There have been no objections to the Plan from any potential Settlement Class Members. Craig Decl. ¶15; Rosen Decl. ¶22. The Plan fairly compensates Settlement Class Members and should be approved.

## V.    NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS

Plaintiff provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. The Claims Administrator mailed more than 72,000 copies of the Court-approved Postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Craig Decl. ¶5. In addition, one nominee sent nearly 40,000 email notifications to their customers, including direct links to the Notice and Claims form on the Settlement website. *Id.* ¶6. The Claims Administrator also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily* on January 10, 2022. *Id.* ¶10. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶12. The notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

24

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.   CONCLUSION

For the foregoing reasons, the Court should: (a) finally certify the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan as fair, reasonable, and adequate.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

Dated: February 21, 2022                 **THE ROSEN LAW FIRM, P.A.**

                                         By: */s/ Laurence M. Rosen*
                                         Laurence M. Rosen (SBN 219683)
                                         355 South Grand Avenue, Suite 2450
                                         Los Angeles, CA 90071
                                         Telephone: (213) 785-2610
                                         Facsimile: (213) 226-4684
                                         Email: lrosen@rosenlegal.com

                                         Phillip Kim (*pro hac vice*)
                                         Joshua Baker (*pro hac vice*)
                                         275 Madison Avenue, 40th Floor
                                         New York, NY 10016
                                         Telephone: (212) 686-1060
                                         Facsimile: (212) 202-3827
                                         Email: pkim@rosenlegal.com
                                         Email: jbaker@rosenlegal.com

                                         *Lead Counsel for Lead Plaintiff and the Class*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On February 21, 2022, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND CERTIFICATION OF SETTLEMENT CLASS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 21, 2022.

/s/ Laurence M. Rosen
Laurence M. Rosen

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:21-cv-00270-DOC-AS