Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GTT Communications, Inc. Securities Litigation | Master File No. 2:21-cv-00270-DOC-AS |
| | **DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF LEAD PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF** |
| | CLASS ACTION |
| | Date: March 21, 2022 Time: 8:30 a.m. Courtroom: 9D Judge: Hon. David O. Carter |
| This Document Relates To: All Actions | |

1

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

I, Laurence M. Rosen, declare as follows:

1.     I am the Managing Partner of The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Arthur Capital Inc. ("Plaintiff") in the above-captioned Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.     I submit this declaration in support of Plaintiff's Motions for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and award to Plaintiff, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Rosen Law's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiff are reasonable and should be approved by the Court.

3.     The Settlement creates a gross settlement fund of $2,000,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, award to Plaintiff, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons other than Defendants who acquired GTT publicly traded securities from May 5, 2016 through July 30, 2021, both dates inclusive, and who were damaged thereby.[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement, filed on October 29, 2021 ("Settlement" or "Stipulation") (Dkt. No. 48).

[2] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

4.     The memorandum in support of Plaintiff's motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.     On January 12, 2021, the action *Frank Roth Beteiligungs GmbH v. GTT Communications, Inc., et al.*, Case No. 2:21-cv-00270 (C.D. Cal.) was filed alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1. On January 29, 2021, a related action, styled as *Grigore v. GTT Communications, Inc., et al.*, Case No. 2:21-cv-00839 (C.D. Cal.) was also filed alleging the same claims.

6.     On March 15, 2021, Arthur Capital Inc. ("Arthur Capital" or "Plaintiff") filed a motion seeking to be appointed Lead Plaintiff and for its counsel, Rosen Law to be appointed Lead Counsel. Dkt. No. 9. After a virtual hearing on April 12, 2021, the Court: consolidated the actions, restyled the lead action as *In re GTT Communications, Inc. Securities Litigation,* Case No. 2:21-cv-00270, and appointed Arthur Capital as Lead Plaintiff and Rosen Law as Lead Counsel. Dkt. No. 31.

7.     Pursuant to the Court's order entering a scheduling stipulation regarding the filing of an amended complaint and responses thereto, Plaintiff was to file the amended complaint by June 14, 2021. Dkt. No. 27. On June 7, 2021, the Parties entered a stipulation requesting the Court stay the action pending a mediation scheduled for July 6, 2021. Dkt. No. 38. The Court granted this request and stayed the Action pending mediation. Dkt. No. 39.

8.     On July 20, 2021, the Parties filed a status report to notify the Court that although the mediation session did not resolve in a settlement, settlement discussions remained ongoing. Dkt. No. 40. Per the Parties' request, the Court set August 3, 2021 as a deadline for a further status report or, if settlement could not be reached, for Plaintiff to file the amended complaint. Dkt. No. 41. On August 3, 2021, the Parties

3

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

filed another status report notifying the Court that they had reached a settlement in principle, that Plaintiff would file an amended complaint by August 17, 2021, and that the Parties would work to formally document the settlement. Dkt. No. 42.

9. On August 17, 2021, Plaintiff filed the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"). Dkt. No. 44.

10. On October 29, 2021, Plaintiff moved for preliminary approval of the Settlement. Dkt. No. 46.

11. On November 1, 2021, GTT filed a Suggestion of Bankruptcy, notifying the Court that the prior day, the Company and certain of its subsidiaries filed voluntary petitions for bankruptcy in the Southern District of New York. Dkt. No. 50.

12. On December 3, 2021, the Parties filed a Joint Status Report which explained that, pursuant to the Settlement, the Parties sought and obtained relief from the bankruptcy court to lift the automatic bankruptcy stay with respect to GTT for the purposes of proceeding with approval and implementation of the Settlement. Dkt. No. 53.

13. On December 6, 2021, the Court entered the Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Dkt. No. 54.

## II. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

14. In the spring of 2021, the Parties began to discuss mediation and engaged Jed Melnick, Esq. of JAMS.

15. On June 24, 2021, the Parties exchanged detailed mediation statements.

16. On July 6, 20221, the Parties attended an all-day, virtual mediation with Mr. Melnick. Although a settlement was not reached at this session, with Mr. Melnick's assistance the Parties continued settlement discussions over the telephone and via email. The Parties reached a settlement in principle and executed a binding

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

Memorandum of Understanding that set forth the material terms and obligations with respect to the settlement on August 9, 2021.

17. Mr. Melnick observed that the discussions between counsel for the Parties included "extensive, detailed, and hard-fought discussions regarding the strengths and weaknesses of the case." *See* Declaration of Jed Melnick, Esq., attached hereto as **Exhibit 1,** ¶13. In Mr. Melnick's opinion, the Settlement represented a "well-reasoned and sound resolution" of the litigation. *Id*. ¶14.

18. In the opinion of the team of lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

19. As set forth herein and in the Final Approval Brief, the Settlement represents approximately 10% of the maximum estimated damages of $20.4 million under Plaintiff's best-case scenario, as estimated by Plaintiff's damages expert. This maximum estimated amount could only be recovered if: all the claims alleged survive to trial; a class be certified; a jury adopt Plaintiff's expert's damages model; Plaintiff defeat any appeals; and Defendants have the ability to pay such a judgment.

20. A lump sum cash settlement in the face of these challenges is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

21. For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 30% of the Settlement Fund, or $600,000, plus interest earned thereon, and reimbursement of litigation expenses. This fee request

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

is within the reasonable range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

22.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice[3], objections to the Settlement must be received by February 28, 2022. To date, there have been no objections to the Settlement. *See* Declaration of Margery Craig Concerning: (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Craig Declaration" or "Craig Decl.") ¶15. A true and correct copy of the Craig Declaration is attached hereto as **Exhibit 2**. If Rosen Law or the Claims Administrator receives any objections, Plaintiff will address them in its reply papers in support of final approval.

23.    Pursuant to the Notice, requests for exclusion from the Settlement must be received by January 24, 2022. The Claims Administrator, Strategic Claims Services ("SCS"), received 22 requests for exclusion. Of these requests, only 15 are valid. Craig Decl. ¶13.

24.    One exclusion request is invalid as the requestor did not provide the documentation required under the Preliminary Approval Order. *Id.* SCS mailed letters to the potential Settlement Class Members with deficient exclusion requests that explained the deficiency and provided an opportunity for these parties to cure their deficient requests, explaining what further information or documentation was required. *Id.* An additional three requests for exclusion were invalid as the investors requesting exclusion were not Settlement Class Members. *Id.* Another three requests for exclusion were invalid as they were untimely. *Id.*

25.    One of the valid exclusion requests was submitted by The Spruce House Partnership LLC ("Spruce House"). Spruce House is a unique investor and differently

---

[3] "Notice" collectively refers to the Postcard Notice, Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

situated from other class members for several reasons. First, Spruce House owned as much as 28% of GTT's stock during the Settlement Class Period.[4] Second, two of Spruce House's co-founders and managers, Benjamin Stein and Zachary Sternberg, were GTT directors during the Settlement Class Period.[5] Lastly, in connection with the GTT plan of reorganization that was confirmed by the Bankruptcy Court on December 16, 2021, Spruce House released GTT and other defendants from liability.[6]

26.     The combined total of GTT shares purchased by those who submitted valid exclusion requests, other than Spruce House, was less than 0.25% of the shares of GTT stock outstanding at the end of the Settlement Class Period. Craig Decl. ¶14.

## III.   NOTICE PROCEDURES

27.     At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, on January 10, 2020, the Claims Administrator published the Summary Notice electronically on *GlobeNewswire* and in print in *Investor's Business Daily*. Craig Decl. ¶10. The Claims Administrator also published the Long Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on December 13, 2021. *Id.* ¶12.

28.     To date, 112,585 potential Settlement Class Members were notified of the Settlement by mailed Postcard Notice or by emailed link to the Settlement website with the Long Notice and Claim Form. *Id.* ¶7. SCS mailed the Postcard Notice to 166

---

[4] *See*, Schedule 13D/A filed on February 27, 2020 with the SEC. *Available at*: https://www.sec.gov/Archives/edgar/data/0001315255/000119312520050404/d893265dsc13da.htm .

[5] *See* Form DEF 14A filed on April 24, 2020 with the SEC. *Available at*: https://www.sec.gov/Archives/edgar/data/1315255/000110465920050810/tm202174-2_def14a.htm .

[6] *See* Craig Decl., Exhibit E (Spruce House's exclusion request); Form 8-K filed on September 2, 2021 with the SEC. *Available at*: https://www.sec.gov/Archives/edgar/data/0001315255/000162828021017980/gtit-20210828.htm .

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

individuals and organizations identified in the transfer records proved to SCS. *Id.* ¶4. SCS mailed an additional 72,489 Postcard Notices to potential Settlement Class Members from individuals or nominees requesting that a Postcard Notice be mailed by SCS. *Id.* ¶5. SCS emailed the Long Notice and Claim Form to four email addresses received from a nominee. *Id.* ¶6. SCS was notified that one nominee emailed 39,926 of their customers to notify them of the Settlement and provided direct links to the Long Notice and Claim Form on the Settlement webpage. *Id*

## IV. PLAN OF ALLOCATION

29. Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Craig Decl., Ex. C (Long Notice) at 8-12. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiff's expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiff used to estimate its maximum recoverable damages, and it closely tracks Plaintiff's theory of the case.

30. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

31. The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

## IV. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

32. The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims and consulted with a damages expert. The investigation consisted of an independent review of public documents and statements regarding and from GTT, retention of an investigator who interviewed former GTT employees and third parties, as well as reviewing the pleadings in the 2019 Action where an amended complaint was filed after a review of over 400,000 pages of documents that GTT and some overlapping defendants produced.[7]

33. Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial. Particularly in this case, the Company's financial position, and other factors related to collectability of any settlement or judgment, factored into the decision to enter the Settlement. During the pendency of the litigation, GTT's financial situation was precarious and the Company and certain of its subsidiaries declared bankruptcy. The uncertainty surrounding whether the Settlement Class could look to the remaining insurance policies for recovery was a large risk. Prior to the time of bankruptcy, there was only approximately $6 million of insurance available after the litigation and settlement of the 2019 Action. Accordingly, Plaintiff faced multiple procedural hurdles and significant merit-based risks involved

---

[7] The 2019 Action refers to *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc. et al.*, Case No. 1:19-cv-982 (E.D. Va.). The 2019 Action is a partially-overlapping securities class action. The Plan of Allocation also accounts for the terms of the settlement of the 2019 Action by not allowing Settlement Class Members in this Action to recover for claims they released in the 2019 Action, but permitting them to recover for other claims they may have in light of the larger Settlement Class Period here.

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

with protracted litigation. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

34.     Although Lead Counsel believe Plaintiff's claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiff would defeat Defendants' anticipated motion to dismiss. Defendants would likely challenge whether Plaintiffs had adequately alleged the elements of falsity, scienter, and loss causation.

35.     Plaintiff faced the risk that the Court may have found that Defendants' statements were not actionably false or misleading. Plaintiff also faced the risk that the Court would find it had not adequately pleaded a strong inference of scienter with sufficient particularity, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Court could also have found that Plaintiff's motive and opportunity allegations were insufficient to show scienter. Plaintiff also faced the risk that the Court would find the alleged theory of loss causation was unavailing.

36.     Plaintiff also faced the challenge of obtaining class certification and establishing market efficiency. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiff could not be assured that the fact finder would credit the testimony of Plaintiff's expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing GTT securities as it would be uneconomical for them to bring individual cases.

37.     Plaintiff also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiff calculated that damages were $20.4 million assuming it prevailed on all its claims. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

38. Discovery would also be costly and time consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, GTT employees, and third parties. Further, since the Class Period began in 2016 and depositions would not start until at least well into 2022, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony. Plaintiff would appreciate some benefit in following the discovery undertaken (but not completed) in the 2019 Action, but additional discovery tailored to this Action would be necessary given the different claims and relevant time periods.

39. Even if Plaintiff succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiff would still have to enforce the judgment and defeat any applicable appeals.

## V.   THE FEE APPLICATION IS FAIR AND REASONABLE

40. The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $65,000. Craig Decl., Exs. A, C, and D. As set forth in the memorandum in support of Plaintiff's motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiff, filed herewith ("Fee Brief"), 30% of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted, and is merited here.

41. Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

11

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

*Lead Counsel's Work and Expertise*

42.     Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

43.     During the PSLRA-mandated discovery stay, Lead Counsel reviewed GTT's public filings and statements during the alleged Settlement Class Period, as well as other news reports and public information relating to GTT. Lead Counsel also thoroughly reviewed pleadings in the 2019 Action including an amended complaint filed after a review of over 400,000 pages of documents that GTT and some overlapping individual defendants produced. Lead Counsel also retained an investigator to interview former GTT employees and third parties. Through its investigation, Lead Counsel determined the scope and strength of the claims Plaintiff could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Lead Counsel ably synthesized these facts into a compelling presentation during settlement negotiations at and after the mediation.

44.     Although the Amended Complaint had not yet been tested, Lead Counsel reviewed Defendants' mediation statement and researched the applicable law with regards to Plaintiff's claims. As a result of these efforts, Plaintiff and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

45.     The total amount of time expended by attorneys and professional staff employed by Lead Counsel is 396.15 hours. This number is derived from the time records Rosen Law regularly maintained. A listing of the professionals at Rosen Law who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Declaration") ¶5. A true and correct copy of the Rosen Fee Declaration is attached hereto as **Exhibit 3**. The total

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

value of the services performed in this case by Rosen Law, based upon our current rates, is $269,296.50.

46. If Lead Counsel's request of 30% of the Settlement as attorneys' fees is granted, Lead Counsel would receive a fee of $600,000. This fee award would represent a lodestar multiplier of approximately 2.23. This multiplier is well within the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

47. As reflected in the firm's resume, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. Rosen Law's Firm Resume is attached to the Rosen Fee Declaration as Exhibit A.

48. Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

**The Caliber of Opposing Counsel**

49. Defendants' Counsel, Cravath, Swaine & Moore LLP ("Cravath"), vigorously represented their clients. Cravath is a highly respected defense firm with substantial securities litigation experience and resources. In the face of this opposition, Plaintiff and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

**The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases**

50. Lead Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiff further describes in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

51.     Those risks are also relevant to an award of attorneys' fees. I describe in detail above and Plaintiff further describes in the Fee Approval Brief the risks Lead Counsel assumed and the time and expenses it incurred without any payment.

52.     From the outset, Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Lead Counsel has received no compensation during the course of this litigation, pending since January 2021.

53.     The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

54.     As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsels' efforts and the favorable result achieved, I believe that a 30% fee is reasonable and that the Court should approve it.

***The Reaction of the Class to the Requested Fee***

55.     As noted above, 112,585 potential Settlement Class Members received notice of the Settlement. Craig Decl. ¶7.

56.     The deadline for objections is February 28, 2022. To date, neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Craig Decl., ¶15.

57.     The deadline to request exclusion from the Settlement was January 24, 2022. As discussed above, SCS received 15 valid request for exclusion. *Id*. ¶13. Besides the exclusion request submitted by Spruce House, the remaining exclusions are minimal, representing less than 0.25% of GTT shares outstanding at the end of the Settlement Class Period. *Id*. ¶14.

14

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

## VI.    REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

58.    Lead Counsel have incurred $40,238.30 in litigation expenses in connection with the prosecution of the Action. These expenses were reasonable and necessary for the prosecution of the Action.

59.    From the outset, Lead Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

60.    A listing of the expenses Rosen Law incurred, compiled from the firm's regularly maintained records, are set forth in the Rosen Fee Declaration, ¶7. The expenses incurred pertaining to this case are reflected in Rosen Law's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. *Id.* ¶8.

61.    Litigation expenses for which Lead Counsel seeks reimbursement included expert consultant fees, travel expenses, legal research fees, document retrieval fees, mediation fees, and filing fees. Each of these expenses was reasonable and necessary for the successful prosecution of this case. The financial expert performed a damages analysis so that Lead Counsel could properly evaluate and negotiate the Settlement.

62.    In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

15

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

## VII. A NOMINAL AWARD TO LEAD PLAINTIFF IS WARRANTED

63.   Plaintiff seeks an award of $7,500 for its time and effort overseeing this action pursuant to the PSLRA. The Declaration of Joseph Rathbun, attached hereto as **Exhibit 4,** details the work Plaintiff completed on behalf of the Settlement Class including filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. Plaintiff has been actively involved and put the concerns of the Settlement Class at the forefront.

64.   As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 21, 2022.

/s/ *Laurence M. Rosen*

16

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On February 21, 2022, I electronically filed the foregoing DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF LEAD PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 21, 2022.

*/s/ Laurence M. Rosen*

DECLARATION OF LAURENCE M. ROSEN; 2:21-cv-00270-DOC-AS